UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CHRISTOPHER UTICK,

Plaintiff,

v.

OFFICER GREENWALT,
OFFICER RADLOFF,
OFFICER KETTLESON,
DEPUTY CHIEF ROBERT GRYTDAHL,
DULUTH POLICE DEPARTMENT,
CITY OF DULUTH, MINNESOTA, and
THE CENTER FOR ALCOHOL & DRUG
TREATMENT,

Defendants.

Civil No. 04-3952 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER**

Blake Horwitz, **LAW OFFICES OF BLAKE HORWITZ**, 155 North Michigan, Suite 714, Chicago, IL 60601, and Theodore D. Dooley, **TED DOOLEY LAW OFFICES, LLC**, 25 North Dale Street, Suite 110, St. Paul, MN 55102, for plaintiff.

M. Alison Lutterman, **DULUTH CITY ATTORNEY**, 410 City Hall, 411 West First Street, Duluth, MN 55802, for defendants Officer Greenwalt, Officer Radloff, Officer Kettleson, Deputy Chief Robert Grytdahl, Duluth Police Department, and the City of Duluth, Minnesota.

Elisa M. Hatlevig, **JARDINE LOGAN & O'BRIEN PLLP**, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042, for defendant The Center For Alcohol & Drug Treatment.

Plaintiff brings this lawsuit against defendant Duluth police officers ("the officers"), the City of Duluth ("the City"), and the Center for Drug & Alcohol Treatment

(the "Center"), asserting claims of excessive force, medical malpractice, and various state law torts, under 42 U.S.C. § 1983 and state law.[1]  Defendants seek summary judgment on all of plaintiff's claims.

## BACKGROUND

Plaintiff is twenty-six years old and is diabetic.  On August 26, 2002, plaintiff went to a bar with some friends.  Plaintiff drank alcohol while at the bar, and later that evening called friends for a ride home from the bar, because he thought he was too drunk to drive.  Plaintiff's friends took him home around 1:30 a.m.  When they dropped plaintiff off, they could tell that plaintiff was having a diabetic reaction:  he was sweating, his eyes were racing, and he was acting confused.  Plaintiff's friends called plaintiff's parents, who came outside.  Plaintiff's mother called 911.  Shortly thereafter, the Duluth Fire Department, the Police department, and an ambulance arrived.

The officers arrived and held plaintiff down while the ambulance personnel attempted to treat plaintiff, by testing his blood sugar and giving him a glucose IV.  Plaintiff was thrashing around and spitting; some of his spit landed on one of the officers, who then put a cloth over his face.  At some point, one of the officers held plaintiff's head to the ground, another placed his knee on plaintiff's back, and eventually the officers flipped plaintiff over on his back and handcuffed him.  After the IV was

---

[1] Plaintiff also named Deputy Chief of Police Grytdahl and the Duluth Police Department as defendants in his Complaint, but stipulated to the dismissal of Grytdahl and the Duluth Police Department.

administered, plaintiff calmed down and was able to sit up properly. The paramedics left plaintiff in the care of his parents. Plaintiff did not suffer, nor claim to suffer, any physical injury resulting from the officers' use of force to restrain him.

One of the officers then decided to give plaintiff a blood alcohol test, although plaintiff was calm and apologetic after having received the IV. Based on the result of the test, which indicated a high blood alcohol level, the officers decided to take plaintiff to the Center for alcohol detoxification treatment. The parties dispute whether plaintiff was handcuffed a second time, and whether plaintiff said it would be a "good idea" to go to the Center. However, the parties do not dispute that plaintiff remained calm during the trip to the Center, and at a minimum, acquiesced in the officers' directions.

When he arrived at the Center, plaintiff signed himself in as "voluntarily" checking in to the Center. Plaintiff asserts that he did not want to go to the Center, and that he only signed in as "voluntary" because he was told that if he did not, he would be involuntarily committed, which would likely result in a longer stay at the Center.

While admitted at the Center, plaintiff's blood sugar levels were periodically checked. Nevertheless, plaintiff's blood sugar levels continued to fluctuate, and he suffered at least one more hypoglycemic episode. Plaintiff was eventually taken to a hospital emergency room during a hypoglycemic episode, and subsequently released. Plaintiff does not claim that he suffered any physical injury resulting from the Center's treatment of him.

**ANALYSIS**

I.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See*, *e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).

II.  **CITY OF DULUTH AND POLICE OFFICERS' MOTION FOR SUMMARY JUDGMENT**

   A.  **§ 1983 Claims**

Plaintiff sues the City and the officers in their individual capacities under 42 U.S.C. § 1983, alleging excessive force in violation of the Fourth and Fourteenth

Amendments.[2] The officers assert that they are each entitled to qualified immunity on the claims raised against them in their individual capacities. The City responds that it is entitled to vicarious official immunity or discretionary immunity for plaintiff's claims.

Police officers are considered state officials, and may therefore assert a qualified immunity defense. *Ivory v. City of Minneapolis*, 2004 WL 1765460, at *3 (D. Minn. Aug. 4, 2004). In determining whether a state official is entitled to qualified immunity, the Court's first inquiry is whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate violation of a federal constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If they do not, then summary judgment in favor of the defendant is appropriate.

Plaintiff alleges that the officers violated his Fourth Amendment right to be free from unreasonable seizure by using excessive force to restrain him during his diabetic reaction. To establish a seizure in violation of the Fourth Amendment, a plaintiff must prove that (1) his person was seized; and (2) the seizure was unreasonable. *Katz v. United States*, 389 U.S. 347 (1967). Whether the seizure is reasonable is determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation. *Graham*, 490 U.S. at 396-97; *McCoy*, 342 F.3d at 848. "The calculus of reasonableness

---

[2] "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

In circumstances similar to the instant case, the Eighth Circuit addressed a plaintiff's excessive force claim, where police officers had physically restrained the plaintiff in order to provide the plaintiff medical treatment, and where the plaintiff suffered very minor physical injuries from the officers' use of force. In *Lacy v. City of Bolivar*, 416 F.3d 723 (8th Cir. 2005), the plaintiff was suffering from depression, and while at a clinic, plaintiff made statements that indicated that he may be suicidal. The doctors at the clinic recommended that the plaintiff be placed on a 96-hour suicide hold, and when the plaintiff attempted to leave, the doctors called the police to detain the plaintiff. When the officers arrived at the clinic to detain the plaintiff, the plaintiff resisted, and the officers responded by physically restraining him and handcuffing him. The plaintiff suffered minor cuts and abrasions to his wrists. In evaluating the plaintiff's claim of excessive force, the Eighth Circuit noted that the plaintiff had only suffered minimal physical injuries resulting from the officers' restraint, and held that the officers' use of force was not excessive. *See also Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) ("a de minimus use of force or injury is insufficient to support a finding of a constitutional violation") (internal citations and quotations omitted); *Curd v. City Court*, 141 F.3d 839, 841 (8th Cir. 1998) (officers did not use excessive force in restraining plaintiff, where there was no injury or physical pain).

Here, although plaintiff was not consciously or intentionally resisting the officers, plaintiff's body was thrashing around during his diabetic reaction, and it is undisputed that some kind of restraint was necessary to give plaintiff medical treatment. Moreover, plaintiff does not claim to have suffered any physical injury from the officers' use of force while they were restraining him. As explained by the Eighth Circuit in *Lacy*, an excessive force claim requires a showing that the plaintiff suffered some physical injury resulting from the restraint. The plaintiff in that case claimed to have suffered minor cuts and bruises due to the officers' restraint; however, the court held that those injuries were insufficient to establish a claim of excessive force. In contrast to the plaintiff in *Lacy*, plaintiff here fails to allege that he suffered even minor physical injuries due to the officers' use of force. Under these circumstances, the Court holds as a matter of law that the officers' use of force in restraining plaintiff was not excessive. Therefore, the Court grants summary judgment on plaintiff's excessive force claim.

### B. State Law Claims

Plaintiff alleges that the officers committed the tort of assault and battery, as well as false imprisonment, by restraining him during his diabetic reaction and then taking him to the Center for alcohol detoxification treatment. Plaintiff further asserts that the City is vicariously liable for the above claims. The officers respond that they are entitled to official immunity, and the City responds that it is entitled to vicarious official immunity or discretionary immunity for each of these claims.

Official immunity is a common law doctrine that protects government officials from suit for discretionary actions taken by them in the course of their official duties. *Kari v. City of Maplewood*, 582 N.W.2d 921, 923 (Minn. 1998); *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn. 1992). Police officers are generally considered discretionary officials. *Johnson v. Morris*, 453 N.W.2d 31, 42 (Minn. 1990); *see also Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 (Minn. 1999); *Pletan*, 494 N.W.2d at 41. To defeat an official immunity defense, a plaintiff must show that the officer acted maliciously, which is defined as a "knowing disregard" for the rights and safety of others. *Kelly*, 598 N.W.2d at 663.

If the conduct of a government employee is protected by official immunity, the employer may also be vicariously immune from liability. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316-17 (Minn. 1998). Whether official immunity is available vicariously is a policy question for the court. *Pletan*, 494 N.W.2d at 42. In *Pletan*, the court determined that police officers were entitled to official immunity for decisions made during a high-speed chase, and went on to hold that the city was entitled to vicarious official immunity, on the grounds that failing to find the city entitled to vicarious official immunity would defeat the purpose of granting the officers official immunity.

Here, the officers were exercising discretion in deciding on the appropriate response to plaintiff's diabetic reaction. As set forth above, plaintiff was thrashing uncontrollably when the officers arrived, and some use of force was necessary to restrain

plaintiff so that the paramedics could treat him. In addition, although plaintiff was calm after having been treated by the paramedics, he did have a high blood alcohol level, and the officers acted within their discretion by taking him to the Center for alcohol detoxification treatment.[3] Moreover, there is nothing in the record to indicate that the officers acted maliciously by using force to restrain plaintiff, or by taking him to the Center for treatment.

Therefore, the Court holds that the officers are entitled to official immunity with respect to plaintiff's state law claims for assault and battery, and that the City is subject to vicarious official immunity under the reasoning in *Pletan*.[4]

---

[3] The Court notes that, even if the officers were not acting as discretionary officials in taking plaintiff to the Center, they were authorized to take plaintiff to the Center for treatment. *See* Minn. Stat. § 253B.05, subd. 2(a) (an officer may take a person into custody and transport the person to a treatment facility if the person is a danger to themselves and others or if the person is intoxicated in public); *see also Carmen v City of Eden Prairie*, 622 F. Supp. 963, 967 (D. Minn. 1985) (citing Minn. Stat. § 253B.05, subd. 2(a)). Here, plaintiff was intoxicated and was in the public alleyway when the officers decided to take him to the Center.

[4] Plaintiff also alleges that the officers committed the tort of "reckless indifference" by willfully and wantonly disregarding plaintiff's known medical needs. However, plaintiff has not provided, and the Court has not been able to find, any authority to support plaintiff's contention that Minnesota recognizes "reckless indifference" as an independent tort. Accordingly, the Court grants summary judgment on plaintiff's claim for reckless indifference.

**III. THE CENTER'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Plaintiff raises a claim of medical malpractice against the Center.[5] The Center responds that plaintiff's claims should be dismissed because plaintiff failed to comply with Minn. Stat. § 145.682.[6]

Minn. Stat. § 145.682 sets forth requirements regarding expert reports and disclosure in a medical malpractice action. Notably, § 145.682 requires that a plaintiff submit an expert-witness affidavit that (1) discloses specific details concerning the expert witness's expected testimony, including the applicable standard of care; (2) identifies the acts or omissions that the plaintiff alleges violated the standard of care; and (3) includes an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages. *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 428 (Minn. 2002). "The primary purpose of an expert affidavit is to illustrate 'how' and 'why' the alleged malpractice caused the injury." *Maudsley v. Pederson*, 676 N.W.2d 8, 14 (Minn. Ct. App. 2004). The affidavit must contain more than "empty conclusions" of causation, and it is "not enough for the affidavit to simply repeat the facts in the hospital record."

---

[5] Plaintiff had raised an excessive force claim against the Center, but he stipulated to dismissal of that claim. To the extent plaintiff also raises a claim of false imprisonment against the Center, the Court would dismiss that claim, because it is undisputed that plaintiff voluntarily signed himself in to the Center for treatment.

[6] Under Minn. Stat. § 145.682, subd. 3(a), the expert affidavit must state that "the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff."

*Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 192-93 (Minn. 1990) (noting that general statements in an affidavit that the defendants "failed to properly evaluate" or "failed to properly diagnose" the patient were insufficient under § 145.682).  Rather, the affidavit "should set out how the expert will use those facts to arrive at opinions of malpractice and causation." *Id.*

Failure to provide an expert affidavit that satisfies the requirements of Minn. Stat. § 145.682 warrants dismissal of the claim.  *See*, *e.g.*, *Maudsley v. Pederson*, 676 N.W.2d 8 (Minn. Ct. App. 2004); *Leubner v. Sterner*, 493 N.W.2d 119, 122 (Minn. 1992).  The decision to dismiss a claim for failure to satisfy the witness-affidavit requirements in Minn. Stat. § 145.682 lies within the discretion of the district court.  *Teffeteller*, 645 N.W.2d at 427.

The Court finds that plaintiff's expert affidavit fails to satisfy the requirements of Minn. Stat § 145.682.  First, the affidavit fails to establish a chain of causation between the alleged malpractice and any injury.  As set forth above, plaintiff does not allege to have suffered any physical injuries or damages, which is one of the elements of a medical malpractice claim.  *See Knuth v. Emergency Care Consultants, P.A.*, 644 N.W.2d 106, 111 (Minn. Ct. App. 2002) (setting forth elements of medical malpractice claim) (citing *Reinhardt v. Colton*, 337 N.W.2d 88, 94 (Minn. 1983)).  If there is no injury, there can be no causation.  *See id.*  In addition, the Court has some concern regarding the conclusory nature of the statements purporting to set forth the applicable standard of care.  But in

- 11 -

- 12 -

view of the fact that no injury is alleged, the Court grants summary judgment on plaintiff's medical malpractice claim.

## ORDER

Based on the foregoing records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The defendant officers' and the City's motion for summary judgment [Docket No. 24] is **GRANTED**; and

2. The defendant Center's motion to dismiss [Docket No. 29] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: March 22, 2006          s/ John R. Tunheim \_
at Minneapolis, Minnesota.          JOHN R. TUNHEIM
         United States District Judge